UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MUNTHER MAHMOUD,

                Plaintiff,

vs.

AKIMA GLOBAL SERVICES, LLC, et al.,

                Defendants.

18-CV-00485-JLS-MJR

REPORT AND
RECOMMENDATION

---

## INTRODUCTION

This case has been referred to the undersigned pursuant to 28 U.S.C. § 636 (b)(1) by the Honorable Lawrence J. Vilardo for hearing and reporting on dispositive motions for consideration by the District Court. (Dkt. No. 97). This case was subsequently assigned to the Honorable John L. Sinatra, who maintained the dispositive referral. (Dkt. No. 108). Before the Court are motions to dismiss Plaintiff's Second Amended Complaint brought by Defendant Miller-Jones, Defendants Akima Global Services, LLC ("AGS") and Akima Logistics Services, LLC ("ALS") (collectively "Akima" or "Akima defendants"), and the United States of America (the "Government"). Defendant Miller-Jones filed her motion under Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6), Akima files their motions under Fed. R. Civ. P. 12(b)(1), (b)(2), and (b)(6); and the Government files its motion under Fed. R. Civ. P. 12(b)(1). For the reasons outlined below, this Court recommends that the District Court grant Defendants' motions to dismiss in their entirety.

## PROCEDURAL HISTORY

The Court assumes familiarity among the parties with the case and its procedural history. Therefore, only the relevant history is outlined here. Plaintiff filed his initial

1

complaint on April 26, 2018 (Dkt. No. 1). Plaintiff filed his First Amended Complaint on July 24, 2018. (Dkt. No. 4). He filed his Second Amended Complaint ("SAC") on February 8, 2019. (Dkt. No. 71). Defendant Miller-Jones filed a motion to dismiss on April 1, 2019. (Dkt. No. 75). The Government filed a motion to dismiss on April 1, 2019 (Dkt. Nos. 80). Defendant Akima filed a motion to dismiss on May 1, 2019. (Dkt. No. 87). On June 21, 2019, Plaintiff filed memoranda in opposition to the motions of Akima and the Government. (Dkt. Nos. 91, 92). The Government and Akima each filed reply papers on August 15, 2019. (Dkt. Nos. 95, 96). On December 4, 2019, the Court heard oral argument on the motions and deemed the matter submitted.

## THE COMPLAINT

The Buffalo Federal Detention Facility ("BFDF" or the "Facility") is located in Batavia, New York and is owned and operated by Immigration and Customs Enforcement ("ICE"), an agency within the U.S. Department of Homeland Security ("DHS"). (Dkt. No. 71 at ¶¶ 2, 14.). All parties agree that on or about November 26, 2014, ICE/Detention Compliance and Removals, ICE Office of Acquisitions Management entered into a contract with Akima Global Services, LLC ("AGS") (the "Contract")[1] whereby Akima supplied detention management support services to the Buffalo Federal Detention Facility. (Dkt. No. 81, ¶ 9; Ex. A; Dkt. No. 82, pg. 7; Dkt. No. 92). The Contract was in effect in June 2016. (Dkt. No. 81, ¶ 9; Ex. A, pgs.7-8).

On or about June 9, 2016, Plaintiff was a detainee at the BFDF. (Dkt. No. 71, ¶ 2). While in custody, officials told him to return to his cell after a verbal confrontation with

---

[1] Plaintiff does not explicitly mention or include the Contract in the SAC. However, the Contract's existence is implied by including AGS as a Defendant and alleging that "Akima Defendants supplied detention officers and medical personnel to Buffalo Federal Detention Facility." (Dkt. No. 71, ¶ 24). The Plaintiff acknowledges the Contract in his papers filed in opposition and Plaintiff's counsel acknowledged the Contract during oral argument.

2

another detainee. (*Id.* at ¶¶ 2, 100). He claims he did so voluntarily, but that after he arrived, his cell was surrounded by detention officers. (*Id.* at ¶ 100). He claims the officers told him to cooperate and to put his hands behind his back so they could handcuff him and take him to another part of the facility. (*Id.* at ¶ 100).

Plaintiff alleges he was put in a distressed position and dragged to the Segregated Housing Unit ("SHU"). (*Id.* at ¶ 103). He claims the officers removed his clothing to embarrass him, that he was denied clothes and proper food for days, and denied medical assistance. (*Id.* at ¶¶ 103,138). Plaintiff admits he refused to eat after not receiving treatment from the health care providers at the facility. (*Id.* at ¶ 105). When he finally made it to the infirmary, he claims he did not receive proper care. (*Id.* at ¶ 110). He also claims that nurses and other medical personnel witnessed the incident on June 9, 2016 and did nothing to assist him. (*Id.* at ¶ 141).

Plaintiff also alleges that detention officers retaliated against him for filing complaints about his treatment. (*Id.* at ¶ 113). Specifically, Plaintiff claims that the individual defendants filed false reports which stated that he did not cooperate with and, in fact, disobeyed detention authorities, refused to obey a lawful order, and caused or threatened to cause serious physical injury to an officer or department property. (*Id.* at ¶¶ 133, 136-38).

Plaintiff alleges twenty causes of action in his SAC. They include causes of action for: (1) negligence against Akima; (2) assault against Akima; (3) battery against Akima; (4) negligent training against Akima; (5) negligent hiring against Akima; (6) intentional infliction of emotional distress against Akima; (7) negligent infliction of emotional distress; (8) negligence against the Government; (9) assault against the Government; (10) battery

3

against the Government; (11) negligent training against the Government; (12) negligent hiring against the Government; (13) intentional infliction of emotional distress against the Government; (14) negligent infliction of emotional distress against the Government; (15) a *Bivens* claim against Government employees for violating Plaintiff's Fourth Amendment Rights; (16) *Bivens* Claim against Government employees for violating Plaintiff's Fifth Amendment Rights; (17) *Bivens* Claim against Government employees for violating Plaintiff's Eighth Amendment Rights; (18) a 42 U.S.C. § 1983 claim against any detention officer acting under the color of state law; (19) a 42 U.S.C. § 1983 claim against any medical personnel defendant acting under the color of state law; and (20) a 42 U.S.C. § 1983 claim against all defendants acting under the color of state law for conspiracy to cover up the subject incident. (Dkt. No. 71).

## DISCUSSION

As an initial matter, the parties have stipulated the following in their papers and at oral argument: (1) the claims against Defendant Miller-Jones are discontinued; (2) the claims for assault, battery, and intentional infliction of emotional distress against Akima are also discontinued as the statute of limitations for those claims has expired; and (3) the §1983/*Bivens* action against Akima is discontinued as the Akima parties are private corporate entities. (Dkt. No. 91, pgs. 5, 10). For these reasons, the Court recommends that dismissal of these claims based upon the parties' stipulation for discontinuance.

I. LEGAL STANDARD

A defendant may move to dismiss a complaint on several grounds under Federal Rule of Civil Procedure ("Fed. R. Civ. P.) 12 ("Rule 12"). These grounds include a lack of subject matter jurisdiction under Rule 12(b)(1); lack of personal jurisdiction over the

defendant under Rule 12(b)(2); and failure to state a claim on which relief can be granted under Rule 12(b)(6).

### a. Subject Matter Jurisdiction under Rule 12(b)(1)

As a threshold matter, a court must determine whether it has subject matter jurisdiction over a plaintiff's claims. *Foster-Bey v. Potter*, 296 F.Supp.2d 195, 201 (D. Conn. 2003). A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff bears the burden of "showing by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003). "[A] motion to dismiss for want of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is reviewed under the same standards as a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Pennacchio ex rel. Old World Brewing Co., Inc. v. Powers*, 2007 WL 446355 at *2 (E.D.N.Y. Feb. 5, 2007). However, "jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). A Court may refer to evidence outside the pleadings when resolving questions of jurisdiction under Rule 12(b)(1). *See Luckett v. Burre*, 290 F.3d 493, 496-97 (2d. Cir. 2002) (citations omitted).

### b. Personal Jurisdiction under Rule 12(b)(2)

On a motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of showing that the Court has jurisdiction over a defendant. *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003). "In other words, a plaintiff must "include

5

an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Holmes v. Apple Inc.*, 2019 U.S. App. LEXIS 36347, at *3-4 (2d Cir. Dec. 9, 2019). "When the issue of personal jurisdiction is decided initially on the pleadings and without discovery, the plaintiff need only show a prima facie case." *MEE Direct, LLC v. Tran Source Logistics, Inc.*, 2012 U.S. Dist. LEXIS 181988, at *5 (S.D.N.Y. Dec. 26, 2012) (internal citations and quotations omitted). "Plaintiffs can make this showing through [their] own affidavits and supporting materials containing an averment of the facts that, if credited . . . would suffice to establish jurisdiction over the defendant." *Id.* (internal citations and quotations omitted). "Thus, a court may consider materials outside the pleadings, but must credit plaintiffs' averments of jurisdictional facts as true." *Id.* (internal citations and quotations omitted). "[A]ll allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." *Id.* (internal citations and quotations omitted). "Nonetheless, where a defendant rebuts [plaintiffs'] unsupported allegations with direct highly specific, testimonial evidence regarding a fact essential to jurisdiction — and plaintiffs do not counter that evidence — the allegation may be deemed refuted." *Id.* at 5-6.

### c. Failure to State a Claim under Rule 12(b)(6)

In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the

6

plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face", *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief [...] requires the [...] court to draw on its judicial experience and common sense [...] [w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss under Rule 12(b)(6), the Court may consider: "(1) the facts alleged on the face of the complaint; (2) documents attached to the complaint as exhibits; (3) documents incorporated in the complaint by reference; and (4) matters of which the court may take judicial notice." *Lightner v. Wenderlich*, 271 F. Supp. 3d 445, 453 (W.D.N.Y. 2017). Even where a document is not incorporated by reference, the court may nonetheless consider it where the complaint "relies heavily upon its terms and effect," which renders the documents "integral" to the complaint. *Chambers v. Time Warner*, 282 F.3d 147, 152-53 (2d Cir. 2002); *accord Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995). However, even if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document and there exist no material disputed issues of

fact regarding the relevance of the document. See *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (*citing Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

## II. APPLICATION

At the center of both Akima and the Government's motions is a contract between AGS and the United States for AGS to provide detention management support services to the Buffalo Federal Detention Facility. Plaintiff does not incorporate the Contract in his SAC, but the Contract is implicitly referenced in his complaint through the inclusion of AGS and ALS as parties. The Court thus views the Contract as "integral" to the complaint. The Government submitted a copy of the Contract as an exhibit attached to its motion to dismiss and said Contract was discussed during oral argument. (Dkt. No. 81, Ex. A). Plaintiff has not disputed the authenticity, accuracy, or relevance of the Contract provided by the Government. In evaluating the instant motions to dismiss, the Court has considered the facts alleged in the complaint as well as the language in the Contract.

### Defendant Diana Miller-Jones

Defendant Miller-Jones brings a motion to dismiss all claims against her for failure to state a claim upon which relief can be granted, and in the alternative under Fed. R. Civ. P. 56. (Dkt. No. 78). Plaintiff has no opposition to this request; thus the Court recommends that this motion to dismiss be granted pursuant to Fed. R. Civ. P. 12(b)(6).

### Defendant Akima Logistics Services ("ALS")

Defendant Akima Logistics Services moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), asserting that ALS has no business or contractual relationship to the BFDF, does not employ any personnel named in this suit, and is a separate and legally distinct entity from Akima Global Services. (Dkt. No. 87-1,

pg. 6). As previously discussed, the Plaintiff has the burden of showing that a court has jurisdiction over a defendant. *Magnetic Audiotape*, 334 F.3d at 206. A plaintiff must "include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Holmes*, 2019 U.S. App. LEXIS 36347, at *3-4.

ALS argues that the Contract at issue is between ICE and AGS, and thus ALS is not a proper party to this action. Indeed, the Contract lists "ICE/Detention Compliance & Removals, Immigration and Customs Enforcement, Office of Acquisition Management" as the issuer and the administrator of the Contract and lists the contractor/offeror as "Akima Global Services LLC." (Dkt. No. 81, pg. 7). ALS is not named anywhere in the Contract. Plaintiff contends that even if ALS is not a party to the contract, AGS is a subsidiary of ALS. (Dkt. No. 91, pgs. 8-9). Plaintiff asserts that the Akima defendants admitted that "Akima Global is a 'subsidiary of Akima Logistics.' *See* Akima Memorandum, at pg. 3 [87-1]. This is simply not true. In its papers, and at oral argument, counsel for Akima stated that ALS and AGS are separate corporate entities under the same holding company, Akima LLC. [2] (Dkt. No. 87-1, pg. 3). At oral argument, the Court pressed Plaintiff's counsel to explain why Plaintiff included ALS in the SAC. Plaintiff's counsel, acting *of counsel* to Plaintiff's attorneys of record, was unsure why the attorneys of record included ALS but stated that based on his personal review of the Akima website, he believed that ALS was a subsidiary of AGS. At the request of the Court for clarification of the relationship between ALS and AGS, Akima submitted an affidavit from Steven Steinberg, senior corporate counsel for AGS and ALS. (Dkt. No. 109). In that affidavit, Mr. Steinberg avers that (1) "AGS and ALS are separate and legally distinct entities;" (2)

---

[2] Akima asserts that ALS is "also a federal contractor and a certified Native Corporation and *a subsidiary of Akima LLC.*" Dkt. No. 87-1 at 3 (emphasis added).

9

"while AGS and ALS share a common parent company, AGS is not a subsidiary of ALS;" and (3) "ALS is not a subsidiary of AGS." (Dkt. No. 109, ¶¶ 3-5).

Here, ALS is not a signatory to the Contract. Akima has provided evidence that while AGS and ALS are subsidiaries of the same holding company, they are separate corporate entities. Furthermore, AGS is not a subsidiary of ALS and ALS is not a subsidiary of AGS. Plaintiff alleges no facts in the SAC to support his claim that AGS and ALS are the same entity or related entities. Indeed, Plaintiff has not shown that ALS had any involvement in the underlying facts of his claims.

For these reasons, the Court recommends that ALS's motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) be granted.

## **Defendant Akima Global Services ("AGS")**

Defendant Akima Global Services brings a motion to dismiss Plaintiff's claims in their entirety pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(2), and 12(b)(6). (Dkt. No. 87). As noted above, the plaintiff concedes that his claims against Akima for assault, battery, and intentional infliction of emotional distress are time-barred by the applicable statute of limitations and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). *See* NY CLS CPLR § 215(3). (Dkt. No. 91, pg. 5).

Plaintiff also concedes that his cause of action against AGS pursuant to 42 U.S.C. § 1983 is barred by the Supreme Court holding in *Correctional Services Corporation v. Malesko*, 534 U.S. 61 (2001). (Dkt. No. 91, pg. 10). Nevertheless, Plaintiff asserts that his *Bivens* claims against all individually-named employees of Akima are viable. (*Id.*). Akima argues that *Bivens* was intended to deter misconduct by federal officers and does not apply to the conduct of employees of private companies contracted to perform

services for the government. *See Bivens v. Six Unknown Names Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). Indeed, the Supreme Court has held that *Bivens* does not confer a private right of action for damages against employees of a privately-operated federal prison even where those employees act under color of federal law, if there is an alternate state remedy. *See Minnecci v. Pollard*, 132 S. Ct. 617 (2012). There, the Court explained that an adequate "alternative, existing process" for prisoners to bring claims under state tort law counseled against creation of a new federal remedy for constitutional claims against private employees. *Id.*, 132 S. Ct. at 623. Similarly, unlike a case against an employee of the Federal Government, state tort law here provides an adequate alternative remedy for Plaintiff to bring his claims against Akima employees. Thus, this Court also recommends dismissal of Plaintiff's *Bivens* claims against the individual employees of Akima Global Services.

Lastly, Akima argues that Plaintiff's remaining state law claims for negligence, negligent training, negligent hiring, and negligent infliction of emotional distress should be dismissed as this Court lacks subject matter jurisdiction over those causes of action. The Court agrees and recommends that Akima's motion to dismiss be granted in its entirety. With the discontinuance or dismissal of all federal causes of action against Akima Defendants, this Court recommends that the District Court decline to exercise supplemental jurisdiction over the remaining state law causes of action pursuant to 28 U.S.C. § 1367(c)(4).

### Defendant United States of America

The Government brings a motion to dismiss all claims against it and its employees except for those relating to alleged negligence in the provision of medical care pursuant

11

to Fed. R. Civ. P. 12(b)(1). (Dkt. No. 80). Plaintiff brings his actions against the Government pursuant to the Federal Tort Claims Act ("FTCA"). (Dkt. No. 71 at ¶ 13). Plaintiff alleges that he can bring these claims against the Government because Akima and its employees are actually employees of the Government. For the reasons described below, the Court disagrees and recommends that the Government's motion to dismiss for lack of subject matter jurisdiction be granted.[3]

"[T]he United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980). The FTCA, enacted in 1946, "constitutes a limited waiver by the United States of its sovereign immunity and allows for a tort suit against the United States under specified circumstances." *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007) (quotation marks omitted); *see also Liranzo v. United States*, 690 F.3d 78, 84-85 (2d Cir. 2012). The FTCA provides jurisdiction to federal courts and waives the sovereign immunity of the United States for:

> claims against the United States, for money damages . . . for . . . injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

*Liranzo*, 690 F.3d at 85 (citing 28 U.S.C. § 1346(b)(1)); *see also* 28 U.S.C. § 2674. The term "employee of the government includes officers or employees of any federal agency and members of the military forces but specifically excludes 'any contractor with the

---

[3] As noted previously, this includes all claims except the negligent medical care claim which will proceed forward.

United States.'" *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997) (*per curiam*) (quoting 28 U.S.C. § 2671). Per the plain language of 28 U.S.C. § 2671, a party cannot bring an action against the United States under the FTCA for injuries caused by an independent contractor of the United States. *See Roditis*, 122 F.3d at 111.

To determine whether a contractor is actually an employee for purposes of the FTCA, a court must examine the nature of the relationship between the contractor and the Government. *Kapnisakis v. United States*, 1995 U.S. Dist. LEXIS 12451, at *5 (S.D.N.Y. Aug. 25, 1995). The examination of the relationship focuses on the "terms of the contract between them." *Moreno v. United States*, 965 F. Supp. 521, 524 (S.D.N.Y. 1997). Specifically, courts look at two factors when examining the contract to determine the nature of the relationship: (1) the power of the Government to control the detailed physical performance of the contractor; and (2) whether the Government supervises the day-to-day operations of the contractor. *Id.* "Whether an entity is classified as a federal employee or an independent contractor is a matter of law. . . not a question of fact." *Korotkova v. United States*, 990 F. Supp. 2d 324, 328 (E.D.N.Y. 2014). Ultimately, the question is "whether the Government has the power to control." *E.D. v. United States*, No. 17-2691, 2018 U.S. Dist. LEXIS 21448, at *10 (E.D. Pa. Feb. 9, 2018) *overruled on other grounds* by *E.D. v. United States*, 764 Fed. Appx. 169, 2019 U.S. App. LEXIS 6468 (3d Cir. Mar. 1, 2019). "In analyzing whether the Government has the power to control, the court should consider whether "day-to-day operations are supervised by the Federal Government." *Id.* (citing *United States v. Orleans*, 425 U.S. 807, 814 (1976)).

"[I]t is well settled that the government's reservation of broad supervisory power does not establish the agency relationship necessary for FTCA jurisdiction." *Cerrone v.*

*United States*, No. 03-CV-848S, 2006 U.S. Dist. LEXIS 69023, at *12-13 (W.D.N.Y. Sep. 22, 2006) (citing *Roditis*, 122 F.3d at 111) (the government's retention of a right to inspect does not convert a contractor into a federal employee); *Leone v. United States*, 910 F.2d 46, 50 (2d Cir. 1990) (no FTCA jurisdiction where government acts as an overseer); *Fisko v. United States GSA*, 395 F. Supp. 2d 57, 63 (S.D.N.Y. 2005) (finding that entity was a contractor because the government did not control physical performance of duties or retain day-to-day control); and *Brown v. United States*, 1994 U.S. Dist. LEXIS 8793, at *14 (W.D.N.Y. June 8, 1994) ("the fact that the United States retained the right to inspect the work under construction to see that the provisions of the contract were carried out and also retained the right to stop work if they were not is not sufficient in itself to make the United States liable for damage resulting from negligence of the contractors in their performance of the contract").

The court in *E.D. v. United States* looked at the contractual relationship[4] between ICE and [the Berks County, PA Residential Center – Immigration Family Center] (the "Center")] for the Center to act as a detention facility and house immigration detainees and their children." *E.D.*, 2018 U.S. Dist. LEXIS 21448, at *1. In that case, the plaintiff filed a complaint alleging a single count of negligence against the Federal Government under the FTCA. *Id.* at *2. Under the terms of the contract, the contracting officer's representative ("COR") "exercised compliance supervision" over the Center. *Id.* In the COR's role supervising compliance, the COR "would occasionally note a deficiency in the contractor's performance of duties. The COR "would either bring up her observations with

---

[4] The contract in *E.D.* was an Intragovernmental Service Agreement ("IGSA") whereas the contract in this case is with a private entity to provide services. In the opinion of this Court, this is a distinction without a difference as the overall factual scenario is similar and the analysis is the same.

[the Center's] managers or inform the contracting officer." *Id.* The court held that it was "evident from the face of the [contract]" that "the Government delegated its safekeeping duties to Berks County." *Id.* at *18. The court explained that "[t]he Government cannot be held liable under the FTCA for breaching a duty that it has delegated to an independent contractor. *Id.* at *16 (citing *Verizon Wash., D.C., Inc. v. United States*, 254 F. Supp. 3d 208, 2017 WL 2483725, at *5 (D.D.C. 2017)). The dispositive inquiry is whether the Government delegated the duty that the plaintiff alleges it breached. *Id.*

Here, Plaintiff asserts numerous torts against the Government. Therefore, the Court will address the issue of control as a whole by looking at the terms of the Contract. Based on this review, the Court agrees with the Government's argument that AGS is an independent contractor and not an employee of ICE.

The Contract lays out in a highly detailed way the separation of duties and responsibilities between the Contractor, Akima Global Services, and the Government. Several provisions, including the sections relating to general duties, highlight that the Contractor is to perform and supervise the day-to-day operations at the Facility without supervision or control by the Government. Section C.I.A, entitled "Performance Work Statement" ("PWS"), states in relevant part:

> The objective of this contract is to obtain detention, transportation and food services for the Buffalo Federal Detention Facility (BFDF) located in Batavia, New York in support of the ICE ERO-Buffalo Field Office. The contractor shall furnish these services, including a trained and qualified management staff, *supervision*, manpower, relief officer(s), uniforms, equipment, and supplies (which includes firearms, ammunition, body restraints, non-lethal devices, body armor, radios and cellular telephones) to provide support seven (7) days a week, twenty-four (24) hours per day.

15

(Dkt. No. 81 at 36 (emphasis added)). Section C.I.D. describes the scope of work and the performance expectations of AGS:

> The Contractor shall perform all services in accordance with ICE 2011 Performance-Based National Detention Standards (PBNDS) (http:/lwww.ice.gov/detention-standards/2011/) optimal and enhanced recreation, Prison Rape Elimination Act (PREA), American Correctional Associate (ACA), Standards for Adult Local Detention Facilities (ALDF), and Standards Supplement, Standards for Health Services in Jails, latest edition, National Commission on Correctional Health Care (NCCHC), and state and local laws on firearms at all times. Some ACA standards are augmented by ICE policy and/or procedure. In cases where other standards conflict with OHS/ICE Policy or Standards, OHS/ICE Policy and Standards prevail. *ICE and third party inspectors will conduct periodic and unscheduled audits and inspections of the facility to ensure compliance with the aforementioned standards.* In addition, the Contractor shall provide full and complete cooperation for any request or investigation conducted by the Government.
>
> Under this contract, the Contractor shall provide detention management services including detention officers, management personnel, *supervision*, manpower, training, certifications, licenses, drug testing, relief officer(s), uniforms, equipment, and supplies (to include firearms, ammunition, body restraints, non-lethal devices and body armor), and automobile insurance necessary to provide detention management and transportation services seven (7) days a week, twenty-four (24) hours per day at BFDF. The Contractor shall also be responsible for other ancillary services including but not limited to transportation and food service.

(*Id.* at 37) (emphasis added). Section II, Subsection 1.5.C, entitled "Direct Supervision of Detainees" also states in relevant part, "The Contractor shall provide direct supervision of all detainees in all area, including supervision in detainee housing and activity areas, to permit Detention officers to hear and respond promptly to emergencies." *Id.* at 74

The Contract further details the Contractor's supervisory responsibilities in all areas of Facility operations and management. Section C.II, Subsection 1, entitled "General Administration, Organization, and Management," states:

16

> The Contractor shall provide a safe and secure environment for staff and detainees. The Contractor shall continuously monitor programs, seek ways to reduce and control violence in the facility, respond to emergencies, maintain accountability of tools, chemicals, and other potentially dangerous items, and maintain security. The Contractor shall monitor detainee programs and Contractor staff performance. In addition, the Contractor shall communicate policy, procedures, and operational practices in accordance with ICE written instructions and policy statements.

(*Id.* at 48). Section II.D.2, entitled "Supervisor Staffing," states:

> The Contractor is responsible for the satisfactory supervision of its employees at all times. Satisfactory supervision includes verifying attendance at all posts and positions, and upholding the work requirements of all personnel assigned under the contract. The Contractor shall provide the COR with the names of the Supervisory Detention officers designated by the Contractor before commencement of services.

(*Id.* at 51). Section II, Subsection 2 deals with personnel issues. In that section the Contractor is required to "employ personnel whose qualifications are commensurate with job responsibilities and authority levels. The Contractor shall assure that employees meet the standards of competency, training, appearance, behavior and integrity. The Contractor will effect disciplinary or adverse action against employees who disregard those standards." *Id.* at 59.

The Contract also lays out the specific roles and responsibilities of Government Employees. Section II, Subsection 1.B.2, entitled, "Roles and Responsibilities of Participating Government Officials" states:

   a. The COR(s) is the main Government official responsible for oversight of the contractor performance and assessing, recording, and reporting on the technical performance of the Contractor. The COR(s) will have primary responsibility for completing the "Quality Assurance Surveillance Forms" to document their inspection and evaluation of the Contractor's work performance. The COR is responsible for providing within-scope technical direction to the contractor, approving invoices, and approving contractor incurrence of costs within the CLIN

17

      schedule. The COR does not have authority to alter, change, or otherwise modify any requirements of the PWS.

  b. ICE Designated Official(s) are BFDF ICE Officers responsible for providing information to the contractor in order for the contractor to perform specific duties. The contractor uses this information to perform tasks in performance of the contract (including but not limited to: preparing a specific number of meals, the movement of detainees to specific locations within the facility, the transportation of detainees to specific locations, and utilization of contractor Disturbance Control Team). *The ICE Designated Official(s) do not have authority to provide technical direction to the contractor, request work outside the scope of the PWS, or otherwise direct the contractor to incur any costs not covered by the PWS or CUN schedule.*

  c. The Contracting Officer (CO) has administrative responsibility for overall contract enforcement. The CO is responsible for evaluating the Contractor's performance in areas of contract compliance, contract administration, and cost and property control. The CO shall review the COR's evaluation of the Contractor's performance and invoices. If applicable, deductions will be assessed in accordance with the evaluation of the Contractor's performance, e.g., monetary adjustments for inadequate performance as outlined in the PRS. The CO is the only person authorized to alter, change, or otherwise modify the terms and conditions of the contract.

*Id.* at 49 (emphasis added).

During oral argument, Plaintiff's counsel highlighted the use of force reporting requirements in the Contract as evidence that ICE provides day-to-day supervision of AGS at the Facility. In the event the Contractor must use force, Section II, Subsection 5.L.3 requires the responsible Detention officer(s) to "immediately report all instances of use of physical force to the ICE Designated Official. Prior to leaving his or her shift, the Officer(s) shall prepare a written report and submit it to the ICE Designated Official." *Id.* at 77. However, this is merely a reporting requirement, and the Contract does not specify that ICE must take any actions or direct the performance of AGS in any use of force incident.

These and other provisions lead the Court to agree with the Government that AGS is a contractor and not an employee of ICE. While ICE maintains certain supervisory and compliance authority to ensure that AGS meets the terms of the Contract, AGS holds control over the day-to-day operations of the Facility. The Contract does not authorize ICE to control the physical performance of AGS. AGS is responsible for hiring, training, and supervising the actions of its employees. Furthermore, AGS has the responsibility for direct supervision of those held at the Facility. The terms of the Contract clearly indicate that ICE has delegated the duty for all detainee operations at the Facility to AGS. The fact that ICE may have a designated official on-site at the Facility does not require the Court to reach an opposite conclusion. See E.D., 2018 U.S. Dist. LEXIS 21448 at *11.[5]

For these reasons, the Court recommends that the Government's motion to dismiss be granted in its entirety.

## CONCLUSION

For the foregoing reasons, it is recommended that the Court (1) grant Defendant Miller-Jones's motion to dismiss (Dkt. No. 75), (2) grant Defendant Akima's motion to dismiss (Dkt. No. 87), and (3) grant Defendant United States of America's motion to dismiss (Dkt. No. 80).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report, Recommendation and Order be filed with the Clerk of Court.

---

[5] The Court is aware that the court in E.D. decided a motion for summary judgment in that case. Therefore, the Court had the benefit of deposition testimony that described not just the contractual intent but what the actual level of control at that facility. However, as previously stated, the Court only needs to analyze the terms of the Contract and does not believe that deposition testimony would yield an opposite conclusion.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72. Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. See Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y. L.R.Civ.P. 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* **Failure to comply with these provisions may result in the District Court's refusal to consider the objection.**

SO ORDERED.

DATED:   March 12, 2020
         Buffalo, New York

HONORABLE MICHAEL J. ROEMER
United States Magistrate Judge